

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 7741 | DATE | 11/25/2002 |
| CASE TITLE | Earl Beecher vs. Connecticut General Life Ins Co. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the foregoing reasons, cross-motions for summary judgment by both plaintiff and defendant are denied. Status hearing set for December 11, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 26 2002 | |
| ✓ | Docketing to mail notices. | | | 29 |
| | Mail AO 450 form. | | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | | 02 NOV 25 PM 1:24 date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EARL BEECHER,            )
                         )
         Plaintiff,      )
                         )
    vs.                  )    No. 01 C 7741
                         )
CONNECTICUT GENERAL LIFE )
INSURANCE COMPANY, a Cigna company, )
                         )
         Defendant.      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Earl Beecher brought filed suit against defendant Connecticut General Life Insurance Company (CGLIC) in the Circuit Court of Cook County, alleging that CGLIC improperly denied benefits due him under his long term disability insurance policy. CGLIC removed the action to this court based on the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff and defendant have filed cross motions for summary judgment, and, for the following reasons, both motions are denied.

## BACKGROUND

Plaintiff, a former employee of Siemens Corporation, participated in Siemens' group insurance plan, which provided long term disability insurance to employees. Siemens arranged for CGLIC to issue a group long term disability insurance policy and to serve as claims administrator with respect to claims for benefits under the policy.

Plaintiff became eligible for disability benefits when he began working for Siemens on February 8, 1999. In November 1999, he became disabled due to congestive heart failure (CHF) and applied for and received short term disability benefits. On February 24, 2000,

plaintiff applied for long term disability benefits from CGLIC asserting that he had become disabled on November 3, 1999, due to angina, lack of breath, swelling, atrial fibrillation, congestion, chest pain and inability to walk.

CGLIC requested medical records from physicians who had treated Beecher. Dr. James Burks, one of plaintiff's cardiologists, sent CGLIC a disability report stating that Beecher was disabled due to "CHF, HTN, paroxysmal atrial fibrillation, and VF arrest." Because this disability arose during the first twelve months of effective coverage, CGLIC opened an investigation into whether the disability resulted from a pre-existing condition which, if in existence during the three months prior to coverage, would disqualify plaintiff from benefits, and requested extensive documentation of Beecher's health history.

Plaintiff's medical records disclosed that he had suffered a ventricular fibrillation arrest in September 1997, which doctors treated by implanting an implantable cardioverter defibrillator (ICD). Dr. Astarthur Nazarian disclosed that he had documented paroxysmal atrial fibrillation, obesity, and pedal edema in plaintiff during a visit on January 11, 1999. Dr. Jose Nazari disclosed that he had seen plaintiff on January 26, 1999, and plaintiff complained of occasional atrial fibrillations. Dr. Nazari stated that this was "some evidence" of CHF and prescribed Lasix to treat plaintiff's conditions (Nazari Letter, p.1). On April 24, 2000, CGLIC denied plaintiff's claim for long term disability benefits because Dr. Nazari's report established that plaintiff had suffered from CHF during the relevant pre-coverage period.

Plaintiff appealed the claim denial on April 28, 2000, supported by a letter from Dr. Mark Landers. Dr. Landers stated that he had treated plaintiff for atrial fibrillation in September 1998, and that while this may sometimes be a symptom of CHF, there was no

evidence of CHF in plaintiff's case. Additionally, plaintiff noted that Dr. Nazarian had performed an echocardiogram on February 5, 1999, two days before beginning work at Siemens, and it had not disclosed any evidence of CHF. CGLIC denied plaintiff's appeal, stating that he had offered no evidence to contradict Dr. Nazari's findings and, further, that Dr. Lander's had treated plaintiff for atrial fibrillation, a symptom of CHF.

Plaintiff asked for reconsideration of the denial of his appeal on December 1, 2000. He supported this with a December 20, 2000, report by Dr. Nazarian regarding the earlier echocardiogram and a followup letter from Dr. Nazari. In this letter Dr. Nazari stated that, while he had considered CHF as a possible diagnosis in January 1999, he now believed that plaintiff was not suffering from CHF at that time and believed that any symptoms of CHF were instead related to medication used to control plaintiff's atrial fibrillation. On March 30, 2001, and again on April 9, 2001, CGLIC issued letters of final denial of plaintiff's claims, stating that plaintiff had not refuted Dr. Nazari's admission that he had treated plaintiff for CHF, or a condition that directly or indirectly resulted in plaintiff's November 1999 disability.

## DISCUSSION

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see* Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002). The court's function is merely to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Plaintiff's cause of action arises under the civil enforcement provision of ERISA, 29

U.S.C. § 1132(a)(1)(B) *et seq.* The group insurance plan provides:

> The Administrative Committee has full and exclusive authority to interpret all plan provisions, to determine eligibility for benefits, and to construe the terms of the plan. Any interpretation or determination made pursuant to such discretionary authority will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(ERISA Information Booklet, p. 2).

The role of the court in reviewing the discretionary decision of an ERISA plan administrator is limited to determining whether the administrator exercised its discretion in an "arbitrary and capricious" manner. Ladd v. ITT Corp., 148 F.3d 753 (7th Cir. 1998). We recognize that defendant has a conflict of interest in that it serves as both the claims administrator and the insurer, and must consider this in determining whether an administrator acted arbitrarily and capriciously. Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1148 (7th Cir. 1998). As a result, the administrator has a duty to seek independent evidence in making a determination. *Id.*

The insurance policy provision in question provides:

Pre-Existing Condition Limitation

GC will not pay Monthly Benefits for any period of Total Disability which results, directly or indirectly, from an Injury or Sickness for which you, during the 3 months prior to the most recent effective date of your insurance: (a) incurred expenses; (b) received medical treatment; (3) took prescribed drugs or medicines; or (d) consulted a licensed physician. This limitation will not apply to a period of Total Disability which begins more than 12 months after the most recent effective date of you insurance. (Group Plan, p. 19).

It is uncontested that plaintiff had CHF in February 2000, resulting in his disability and qualifying him for long term disability benefits. The issue in question is whether any of plaintiff's medical treatment between November 8, 1998 and February 7, 1999 was for injuries

or sicknesses that "directly or indirectly" led to the disability.[1]

In making its determination, CGLIC relied primarily on Dr. Nazari's letter of January 26, 1999, stating that there "was some evidence of congestive heart failure," and that he had decided to prescribe Lasix. This determination was later contradicted by Dr. Nazari himself in his letter of December 1, 2000, which plaintiff made available to defendant prior to its decision to deny reconsideration of the earlier appeal. The majority of the other information collected by the defendant seems to indicate that plaintiff's physicians did not believe that he had CHF during the relevant pre-coverage period. Defendant also argues that evidence from the physicians, taken as a whole, indicates that plaintiff had a "cardiac condition" that was substantially similar to the condition that ultimately caused his disability.

When a claim administrator receives two or more differing opinions as to a claimant's medical history, it has wide discretion in choosing between the diagnoses to accept when determining whether or not to award benefits. Hightshue, 135 F.3d at 1148-49. We find nothing to indicate that the administrator's discretion is limited when the conflicting diagnoses come from the same physician. Also, while defendant indicates that it relied primarily on this letter, it points to other evidence in the records of plaintiff's ongoing cardiac condition. Thus, we cannot say as a matter of law that defendant's decision to accept the earlier diagnosis of Dr. Nazari rather than the later letter was arbitrary and capricious.

Nor can we say that defendant's determination was clearly *not* arbitrary and capricious. The decision appears to be against the weight of the evidence provided by

---

[1] Plaintiff argues that the entire provision should be determined to be unenforceable because the "directly or indirectly" clause allows the claim administrator to determine that an infinite number of injuries or illnesses disqualify the insured from coverage. While we disagree with plaintiff, we note that any interpretation of the clause must not be made arbitrarily and capriciously. The clause does not give the administrator blanket authority to grant or deny benefits without reason.

plaintiff's physicians. Defendant relied heavily on the statement of a single physician which was later contradicted by the same physician, while maintaining that plaintiff could not produce any evidence to refute its initial conclusion. Whether defendant's decision was permissible under the terms of the insurance policy is a genuine issue for trial.

## CONCLUSION

For the foregoing reasons, cross-motions for summary judgment by both plaintiff and defendant are denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Nov. 25, 2002.